# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

WILLIAM JACKSON,

    Plaintiff,

    v.

THE STANDARD FIRE INSURANCE COMPANY,

    Defendant.

Civil Action No. TDC-17-1612

## MEMORANDUM OPINION

Plaintiff William Jackson has brought this action against Defendant The Standard Fire Insurance Company ("Travelers") alleging a failure to reimburse him under a homeowner's insurance policy for losses sustained from an overflowing toilet. Jackson alleges a common law breach of contract claim and a violation of Section 3-1701 of the Courts and Judicial Proceedings Article of the Maryland Code for failing to act in good faith in the processing of his claim. Presently pending before the Court is Travelers' Motion for Partial Dismissal, or in the Alternative, Motion for Partial Summary Judgment. Having reviewed the Complaint, briefs, and other submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

The following facts are presented in the light most favorable to Jackson, the nonmoving party.

## I. The Insurance Claim

Jackson owns a home in Fort Washington, Maryland ("the Property") for which he maintained a homeowner's insurance policy issued by Travelers ("the Policy"). The Policy provides insurance coverage for all losses to the Property with certain defined exceptions, notably a $5,000 cap on damage caused by mold.

On October 5, 2014, Jackson returned to the Property after a business trip and discovered a significant amount of damage caused by a malfunctioning toilet. While Jackson was away, an estimated 75,000 to 110,000 gallons of water flowed from an upstairs toilet, through the main level of the Property and into the basement, damaging or destroying Jackson's furniture, electronics, clothing, and other personal property, warping the master bedroom floor, and causing part of the basement ceiling to collapse. Jackson promptly contacted Travelers to report the loss.

Travelers conducted an initial evaluation of the Property on October 6, 2014. Travelers concluded that the damage to the basement ceiling, walls, and floors, including the warped floor on the main level of the Property, was due to water damage. However, Travelers sought to investigate further whether certain damage was due to water or mold. Travelers conducted a second inspection of the Property on October 22, 2014 and concluded that water damage did not account for damage to the drywall or certain contents of the basement. On October 27, 2014, Travelers issued Jackson a check for $3,000 as an advance payment on the $5,000 mold limit under the policy.

Meanwhile, Travelers had instructed Jackson to retain an industrial hygienist to evaluate the damage. Jackson thus hired EFI Global ("EFI") to conduct an inspection of the Property on October 20, 2014. On October 31, 2014, Jackson gave Travelers a copy of EFI's report, which

concluded that the main level had undergone extensive water damage and that the basement sustained "extensive water damage and subsequent fungal growth." Compl. ¶ 20, ECF No. 2. Travelers refused to reimburse Jackson for the cost of EFI's inspection. According to Travelers, EFI did not test for mold or establish a protocol for mold mitigation. Travelers then retained a different contractor, ESI Environmental Solutions, Inc. ("ESI") to evaluate the water and mold damage to the Property.

Travelers also retained two additional contractors, Rolyn Companies, Inc. ("Rolyn"), to estimate the damage to the house, and South River Restoration ("SRR"), to estimate the damage to Jackson's personal property. On December 8, 2014, a Rolyn representative inspected the Property and began working on a project estimate based on the damage described in the ESI report, not the EFI report. On December 29, 2014, an SRR representative arrived at the Property. According to Jackson, SRR sought to conduct an inventory of all of Jackson's personal property, regardless of whether he intended to claim that a particular item had been damaged. Jackson objected to what he called the "wholesale, unnecessary (and seemingly illegal) invasion of [his] privacy" and refused to consent to SRR's inspection. Mot. Dismiss Ex. 3 at 3, ECF No. 19-4.

In the end, Travelers concluded that approximately 70 percent of the damage to the Property, and the majority of the damages to personal property, was due to mold rather than water damage. Because of the cap on mold damages, Jackson did not receive full reimbursement for all damages he claimed.

## II. The Administrative Complaint

On January 19, 2015, Jackson filed a Complaint with the Maryland Insurance Administration ("MIA") (the "MIA Complaint"). Jackson alleged a failure by Travelers to

"process [his] claim in good faith," a "waste of policy resources," a failure to permit Jackson to select his own contractors in accordance with Maryland regulations and law, and "harassment." Mot. Dismiss Ex. 4 at 2, ECF No. 19-5. Although Jackson sought to halt all consideration of his claim with Travelers while the MIA Complaint was under review, Travelers and Jackson continued to engage in discussions. On May 21, 2015, Travelers paid Jackson $21,889.45, based on Rolyn's estimate of the cost to repair the damage to the Property, as well as $10,409.58, based on Rolyn's water mitigation estimate. Although Travelers estimated that the full cost to remediate mold damage to the Property was $15,780.18, Travelers paid Jackson only the remaining $2,000 of the $5,000 available mold limit. On June 8, 2015, Travelers paid Jackson $13,770.44 based on SRR's estimate of the cost to pack and store Jackson's personal property. On August 6, 2015, after the MIA recommended that Travelers compensate Jackson for hiring EFI, Travelers paid Jackson $810.00, the cost for EFI's report listed on the initial invoice submitted by Jackson to Travelers. On August 31, 2015, Travelers paid $11,385.62, out of a replacement cost of $17,134.33, for damage to Jackson's personal property caused by water damages. This last payment represented compensation for items deemed to have been exclusively damaged by water, or initially water-damaged and then damaged by subsequent mold growth, but not personal property items that Travelers deemed to have been damaged by mold only, because the $5,000 mold damage limit had already been reached.

Jackson continued to dispute Travelers' handling of his claim throughout this period. In a May 29, 2015 letter to the MIA, Jackson stated that he was still dissatisfied with Travelers' handling of his claim. In a discussion with an MIA investigator on September 9, 2015, Jackson reiterated his belief that Travelers had not paid him the full amount owed under the policy, and he sent a letter on September 14, 2015 to refute Travelers' claims that certain personal property

4

was damaged by mold only. In his September 14, 2015 letter, Jackson stated that he actually paid EFI $2,500, not the $810 he had already been reimbursed. Travelers requested documentation for this price and has not paid any additional amount to Jackson for the EFI study.

On October 2, 2015, the MIA completed its review of the MIA Complaint and issued its decision in the form of a letter to Jackson. The MIA examined Traveler's handling of Jackson's claim under Sections 4-113 and 27-303 of the Insurance Article of the Maryland Code, which define various unfair claim settlement practices such as "misrepresent[ing] pertinent facts or policy provisions that relate to the claim or coverage at issue" and "refus[ing] to pay a claim for an arbitrary or capricious reasons based on all available information," Md. Code Ann., Ins. § 27-303(1)-(2) (West 2014), and also considered whether Travelers met its "obligation to deal honestly and in good faith with its customers." Mot. Dismiss Ex. 5 at 7, ECF No. 19-6.[1] The MIA concluded that Travelers' "position is reasonably supported by the results of the claim investigation and specific language from your insurance policy" and that "Travelers' actions have not been shown to be arbitrary and capricious, to be lacking in good faith or to otherwise be in violation of the Insurance Article." *Id.* Although informed of his right to request a hearing on the MIA's decision, Jackson declined to exercise that right within the proscribed 30-day time period.

Following the resolution of the MIA Complaint, Jackson continued to interact with Travelers regarding his claim. Between October 2015 and January 2017, Travelers paid Jackson an additional $13,803.18 toward repair and replacement work at the Property. Travelers closed

---

[1] Because this Exhibit lacked page numbers, the page number cited is the number assigned by the CM/ECF system.

Jackson's claim on March 16, 2017, stating that it would reopen the claim if Jackson submitted a claim for recoverable depreciation.

On April 26, 2017, Jackson filed this action against Travelers in the Circuit Court for Prince George's County, Maryland. Travelers removed the case to this Court on June 13, 2017.

## DISCUSSION

In its Motion, Travelers asserts that Count III of the Complaint, alleging a violation of Section 3-1701 of the Courts and Judicial Proceedings Article of the Maryland Code ("Section 3-1701"), Md. Code Ann., Cts. & Jud. Proc. § 3-1701 (West 2011), should be dismissed because Jackson failed to exhaust administrative remedies. Specifically, Travelers claims that Jackson failed to comply with the requirement that he first file and receive a final decision on a claim under Section 27-1001 of Insurance Article of the Maryland Code ("Section 27-1001"), Md. Code Ann., Ins. § 27-1001 (West 2014), that Travelers failed to act in good faith in processing his claim. Travelers asserts that failure to exhaust administrative remedies under this provision is a jurisdictional matter and thus seeks dismissal under Federal Rule of Civil Procedure 12(b)(1). In the alternative, Travelers seeks dismissal under Rule 12(b)(6) on the grounds that because Jackson failed to plead administrative exhaustion, he has failed to state a claim for relief under Section 3-1701, or summary judgment under Rule 56 based on the claim that there is no genuine issue as to a material fact on the issue of exhaustion of administrative remedies. Jackson contends that a failure to exhaust administrative remedies is not a jurisdictional matter and has been sufficiently pleaded.

**I.    Legal Standard**

Whether exhaustion of administrative remedies is a jurisdictional issue depends on the specific statutory scheme at issue. The United States Supreme Court has noted that "[o]n the

subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous," *Arbaugh* v. *Y & H Corporation,* 546 U.S. 500, 511 (2006), and has "cautioned ... against profligate use of the term ... 'jurisdictional.'" *Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers,* 558 U.S. 67, 82 (2009).  Accordingly, it has "adopted a readily administrable bright line for determining whether to classify a statutory limitation as jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (quoting *Arbaugh*, 546 U.S. at 516)).  Absent the legislature "clearly stating that a threshold limitation on a statute's scope shall count as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 507 (4th Cir. 2015) (quoting Arbaugh, 546 U.S. at 515, 516) (internal alterations omitted).

In this instance, the Maryland General Assembly has signaled that exhaustion of the MIA administrative process is a jurisdictional prerequisite to a claim under Section 3-1701. Section 3-1701 states that absent certain circumstances not present here, "a party may not file an action under this subtitle before the dates of a final decision under § 27-1001 of the Insurance Article," the provision describing an administrative claim before the MIA.  Cts. & Jud. Proc. § 3-1701(c)(1).  Crucially, this provision falls within Title 3 of the Courts and Judicial Proceedings Article of the Maryland Code, which is entitled "Courts of General Jurisdiction – Jurisdiction/Special Causes of Action."  Thus, the Maryland legislature has expressed its intent that this exhaustion requirement constitute not merely an element of a claim, but a jurisdictional prerequisite to the presentation of such a claim in a Maryland court.  Accordingly, an allegation that a plaintiff has failed to exhaust administrative remedies before bringing a Section 3-1701 claim is properly considered as a challenge to the Court's subject matter jurisdiction. *See Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. ELH-16-3431, 2017 WL 2377105, at

*6 (D. Md. May 31, 2017) (stating that a motion to dismiss a claim under Section 3-1701 for failure to exhaust administrative remedies is a challenge to the court's subject matter jurisdiction) (quoting *Carlyle v. Travelers Home & Marine Inc. Co.*, No. WDQ-13-2964, 2014 WL 2573381, at *3 (D. Md. June 5, 2014)).

On a Rule 12(b)(1) motion, the plaintiff bears the burden of proving that subject matter jurisdiction exists. See *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Because the Motion presents a factual dispute over whether such exhaustion has occurred, the Court may consider external materials, such as the exhibits submitted by the parties with their briefs on the Motion, in resolving the question of jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

## II. Exhaustion of Administrative Remedies

It is undisputed that on January 19, 2015, Jackson filed an administrative complaint with the MIA alleging a lack of good faith by Travelers and that on October 2, 2015, he received a final decision on that complaint. It is also beyond dispute that Jackson did not file the present Complaint until April 26, 2017, well after that final decision was issued. Thus, under the plain language of the statute, Jackson has met the requirement that "a party may not file an action under this subtitle before the dates of a final decision under § 27-1001 of the Insurance Article." Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c)(1); *see also* Md. Code. Ann., Ins. § 27-1001(c)(1) ("[A] person may not bring or pursue an action under § 3-1701 of the Courts Article in a court unless the person complies with this section."); *id.* § 27-1001(d)(1) ("A complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed with the [MIA].").

Travelers, however, argues that Jackson has nevertheless failed to exhaust administrative remedies because (1) he filed the MIA Complaint too early, before Travelers had completed its

8

adjudication of Jackson's insurance claim; and (2) he failed to comply strictly with all procedural requirements, in particular, he failed to submit all relevant documents and did not include a form cover sheet with the MIA Complaint. Neither argument is persuasive.

### A. Timing

Travelers argues that Jackson's filing of the MIA Complaint on January 19, 2015 did not effect exhaustion of administrative remedies because it was premature. Travelers notes that after that filing, and even after the MIA issued its final decision on October 2, 2015, Jackson continued to engage in discussions with Travelers regarding the damage to the Property, Travelers paid an additional $13,803.18 to Jackson, and Travelers did not officially close Jackson's claim until March 16, 2017.

Travelers' argument, however, is not supported by the plain language of the statute. Section 3-1701 requires only that "a party may not file an action under this subtitle before the dates of a final decision under § 27-1001 of the Insurance Article." Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c)(1). The trigger for exhaustion is a "final decision," without any limitation. Likewise, the requirement that "[a] complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed with the [MIA]," Md. Code. Ann., Ins. § 27-1001(d)(1), requires only that an administrative claim be "filed" with the MIA before being brought in court, without regard to the status of the insurance company's claim process. Indeed, none of the applicable statutes or regulations address when an administrative complaint must be filed relative to the completion of the insurance company's claim process. *See generally* Md. Code Ann., Cts. & Jud. Proc. § 3-1701; Md. Code Ann., Ins. § 27-1001; Md. Code Regs. ("COMAR") § 31.15.15 (2017). No provision requires the MIA to reject an administrative complaint as premature, or to refrain from issuing a final decision while the insurance claim is pending; rather, the only timing

9

requirement is that the MIA issue a decision within 90 days of filing, with the consequence that a failure to do so "shall be considered a determination that the insurer did not breach any obligation to the insured," allowing a plaintiff to bring a Section 3-1701 claim in court. *See* Md. Code Ann., Ins. § 27-1001(e)(1)(i), (ii); *id.* § 27-1001(g)(1). Had the legislature intended for exhaustion to be effective only when the administrative complaint is filed or finally adjudicated *after* the insurance company closed its claim file, it would have inserted such a requirement. It did not. The Court will not read into the statute a requirement that does not exist.

Even the legislative history of Section 3-1701 and Section 27-1001 shows no sign that the Maryland General Assembly sought to impose such a restriction or unnecessarily constrain the filing of civil claims by policyholders. Indeed, the Counsel to the General Assembly noted that the exhaustion requirement "returns the parties to the independent civil action that the insured already possessed." *See* Robert A. Zarnoch, Letter to the Hon. Joseph F. Vallario, Jr., Chairman, House Judicial Comm., S.B. 389, Reg. Sess. at 2 (Mar. 23, 2007) (on file with the Court).

Notably, Travelers has identified no precedent for its position. The Court finds unconvincing Travelers' argument that in the absence of its proposed restriction, policyholders will unfairly file premature administrative complaints in order to bypass the claims process and proceed directly to court. Here, Jackson filed the MIA Complaint after at least two inspections by Travelers and a determination that a substantial portion of the damage to the Property would be classified as mold-related, and thus capped under the $5,000 policy limit for mold. Travelers had already rejected the report of EFI, the industrial hygienist retained by Jackson, and retained a separate contractor to complete a new inspection used to support its conclusion that some of the damage was unconnected to the water damage. Jackson's belief that Travelers was not handling his claim in good faith is readily apparent in his January 19, 2015 letter to Travelers, which was

10

attached to the MIA Complaint, in which he expresses frustration with the rejection of EFI's findings and Travelers' insistence on repeated rounds of inspections.

More importantly, by the time that the MIA issued its final decision in October 2015, Travelers' claims process had resulted in determinations on what damage to the Property and to Jackson's personal property was caused by water and what damage was caused by mold only, actual payments to Jackson covering the water damage, payment to Jackson of the full $5,000 maximum for mold damage, and a determination that he would receive no more for the mold damage. Thus, the MIA final decision was made after Travelers had substantially completed its claims process.

Tellingly, Travelers, the party best situated to object to the filing and resolution of the MIA Complaint as premature, never did so. Nor did the MIA conclude that the MIA Complaint was filed too early. Had such an objection been raised, Jackson could have withdrawn the MIA Complaint or filed a new one after Travelers closed its claim file. Where neither the MIA nor Travelers objected to the timing of the MIA Complaint and instead allowed it to proceed to final decision without protest, it would be a perverse result to allow Travelers to sandbag Jackson by claiming, after the fact, that the final decision cannot count for exhaustion. The risk is not that early filing of administrative complaints will prejudice insurance companies—the MIA actually ruled in Travelers' favor—it is that policyholders who completed the entire exhaustion process would lose their Section 3-1701 claims because an insurance company took some action after the final decision was issued.

Although the courts have not addressed this precise issue, the United States Court of Appeals for the Fourth Circuit, in the context of the Prison Litigation Reform Act's administrative exhaustion requirement, recently held that a prisoner who submitted an

11

administrative grievance objecting to the cancellation of a religious service was not required to submit an additional grievance when the prison, after resolution of the initial grievance, agreed to restart the services, then made a second decision to cancel the services. *Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017). The Fourth Circuit reasoned that the first grievance provided the prison with "notice of, and an opportunity to correct, a problem," which satisfied the purposes of the exhaustion requirement. *Id.* (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). Although based on a different statutory scheme, the principle underlying *Wilcox*, that completion of the administrative exhaustion process should not be undone by a defendant's later action reflecting a continuing dispute, is sound and equally applicable here. Where the plain language of the statute provides no basis to conclude that the MIA's final decision failed to effect exhaustion of Jackson's administrative remedies, and Travelers has offered no persuasive reason for the Court to read into the statute an unwritten requirement that the final decision pre-date the closure of the insurance claims process, the Court declines to find that Jackson failed to exhaust his administrative remedies by filing the MIA Complaint before Travelers officially closed the claim.

### B. Technical Requirements

Travelers also argues that Jackson failed to exhaust administrative remedies because he did not strictly comply with all procedural requirements for submitting a claim to the MIA. For example, an administrative complaint must (1) "be accompanied by each document that the insured has submitted to the insurer for proof of loss"; (2) "specify the applicable insurance coverage and the amount of the claim under the applicable coverage"; and (3) "state the amount of actual damages, and the claim for expenses and litigation costs." Md. Code Ann. Ins. § 27-1001(d)(2). Under applicable regulations, an administrative complaint must also include an

original and a copy of the Section 27-1001 filing, and it must "be accompanied by a civil cover sheet." COMAR § 31.15.15.04.A(1) (2017).  According to Travelers, Jackson's MIA Complaint does not state the amount of actual damages or litigation costs sought by Jackson, does not apprise the MIA of applicable insurance coverage and the amount of the claim, and does not use the proper cover sheet.  Travelers also claims that Jackson did not submit all relevant documents.

Travelers' hypertechnical argument fails for two reasons.  First, a review of the statutory exhaustion requirement does not reveal language supporting the conclusion that a failure to meet every procedural requirement for an administrative complaint would thwart exhaustion.  Section 3-1701 requires only that "a party may not file an action under this subtitle before the dates of a final decision under § 27-1001 of the Insurance Article."  Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c)(1).  The trigger for exhaustion is a "final decision," not the submission of all relevant documents or the filing of a particular cover sheet.  Likewise, the requirement that "[a] complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed with the [MIA]," Md. Code. Ann., Ins. § 27-1001(d)(1), imposes a temporal requirement, without an exception for complaints that lacked a cover sheet or other specific information.

Although Section 27-1001(c)(1) provides that "a person may not bring or pursue an action under § 3-1701 of the Courts Article in a court unless the person complies with this section," *id.* § 27-1001(c)(1), this requirement has never been interpreted to bar exhaustion in the absence of strict compliance with every procedural requirement for a Section 27-1001 administrative complaint.  Indeed, in *Carlyle v. Travelers Home & Marine Ins. Co.*, No. WDQ-13-2964, 2014 WL 2573381 (D. Md. June 5, 2014), the court rejected a similar argument that a plaintiff failed to exhaust her claims before the MIA because her complaint was reviewed by the MIA under Section 27-303 of the Insurance Article, not Section 27-1001.  *Id.* at 4.  The court

13

concluded that where Section 27-303 references the issue of good faith under Section 27-1001, and the MIA's final decision explicitly stated that it considered and decided the issue whether the insurer had acted in good faith, the exhaustion requirement had been satisfied. *Id.* at *4. Here, although Jackson did not use the official Section 27-1001 cover sheet, the MIA Complaint explicitly alleged a lack of good faith. The MIA took a similar approach to that followed in *Carlyle* by analyzing Section 27-303 factors as well as the issue of good faith, and the MIA explicitly made a finding on the issue of good faith. As in *Carlyle*, the Court declines to elevate form over substance and construe the statute to require strict compliance with all technical requirements for a Section 27-1001 complaint in order to satisfy the exhaustion requirement. *See id.*

Second, a requirement of strict compliance with all procedural requirements to trigger exhaustion would be profoundly unfair to the insured party in the absence of any contemporaneous objections by the MIA or the insurance company. Significantly, neither Travelers nor the MIA objected to any of Jackson's technical failures to comply with the requirements of Section 27-1001 or COMAR 31.15.15.04. In particular, there is no evidence that Travelers objected to any lack of specificity in the MIA Complaint or Jackson's subsequent filings, the failure to include relevant documents, or the lack of a specific type of cover sheet. If these deficiencies truly prejudiced Travelers in any way, it had every opportunity to raise objections before or after the MIA issued its final determination, or to supplement the record with relevant documents, most or all of which were in its possession. Instead, Travelers seeks to undercut Jackson with an after-the-fact objection unsupported by any precedent. Where the exhaustion requirement mandates a "final decision," which Jackson received, the Court rejects Travelers' self-serving, hypertechnical attempt to skirt the Section 3-1701 claim.

Finally, Travelers' claim that the failure to comply strictly with all procedural requirements denied it "the opportunity to fully assess its potential exposure and test its theory of the case in front of the MIA" is singularly unconvincing. As noted above, a review of the submitted materials reveals that the MIA and Travelers were fully aware that Jackson was filing a good faith claim from the face his submitted cover sheet. Moreover, the MIA's final decision letter reveals that the MIA received multiple submissions from both Jackson and Travelers such that Travelers had a full and fair opportunity to submit any relevant information, and that the MIA thoroughly reviewed the Policy and the parties' competing claims whether damages resulted from water or mold and evaluated the MIA Complaint on the issue of good faith. There was no unfairness that would justify barring consideration of Jackson's Section 3-1701 claim.

## CONCLUSION

For the foregoing reasons, Travelers' Motion for Partial Dismissal, or, in the Alternative, Partial Summary Judgement, is DENIED. A separate Order shall issue.

Date: January 9, 2018

THEODORE D. CHUANG
United States District Judge